MARSHALL v. WIRT.

(Circuit Court of Appeals, First Circuit. April 21, 1916.)

No. 1137.

1. PATENTS ⊜⇒328—INVENTION.
The Marshall patent, No. 784,695, for insulating lining, claim 6, which covers an insulating lining for the outer shell, consisting of a paper tube having a portion of its diameter greater than that of the shell within which it is to fit, and which by its elasticity will maintain an effective holding pressure and prevent it from falling out when the shell is removed for repairs, while for an ingenious and useful device, involves only a change in form of the paper tubes previously in use, and is void for lack of patentable invention.

2. PATENTS ⊜⇒16—INVENTION.
Every ingenious and beneficial mechanical device cannot be accepted as involving invention or discovery within the meaning of the patent law.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 14, 15; Dec. Dig. ⊜⇒16.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by Norman Marshall against Herbert C. Wirt. Decree for defendant, and complainant appeals. Affirmed.

Benjamin Phillips, of Boston, Mass., for appellant.

Reuben L. Roberts, of Boston, Mass., for appellee.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This case has reference to a patent granted to Norman Marshall, which is numbered 784,695, and dated March 14, 1905. The supposed invention relates to insulating sleeves used in incandescent lamp sockets to separate the metallic outer shell from the current-carrying parts of the socket.

[1] This patent has been before the courts in another case. It was before Judge Brown, sitting in the Circuit Court for the District of Massachusetts in 1907, and he wrote an opinion which was reported in Marshall v. Pettingell-Andrews Co., 153 Fed. 579. There was an appeal from his decision, and there was an opinion in the Court of Appeals by Judge Colt, which was reported in 164 Fed. 864, 91 C. C. A. 8. In that case, claims 5 and 9 were in issue, and there was a certain disclaimer. Claim 6 was not in issue. There was considerable discussion before us as to the effect of the disclaimer, and as to the bearing of these opinions upon claim 6, which is in issue here.

As we reach the conclusion that claim 6 does not involve invention, we have no occasion to discuss the effect of the disclaimer, nor the opinions in the former case, further than to say that, if they bear at all upon the question before us, they in effect at least bear a little against the idea of sustaining the patentability of the claim.

Claim 6 is as follows:

"An insulating lining consisting of a paper tube having its diameter reduced for a portion of its length, and having a portion of greater diameter than the part within which it is to fit, substantially as described."

It is quite true that the device described by Marshall has gone into general use. That, of course, shows that it involves a considerable measure of merit. In his specification Marshall points out that it is desirable that sleeves used as linings for the outer shell should be retained there, and that they should not fall out, as they frequently did, when the shells were removed for purposes of repair, and that by being held there certain dangers were minimized; that with the former insulating linings or insulating fiber tubings it had been found impracticable to make the linings invariably fit the shells with just the requisite closeness to prevent the linings from falling out, and at the same time permit the ready insertion and removal of parts when repairs were necessary; that the close-fitting linings were affected by moisture and temperature, and that under the earlier conditions there was danger that linings would drop out when shells were removed, and if, by chance, proper readjustments were not made, hazards would result.

Marshall points out that he has discovered means for curing these difficulties through an incandescent lamp socket which, when used as

a lining for the outer shell, will be retained there at all times and under all conditions, without danger of dropping out, and without offering undue resistance to its removal. His lining was made of paper, while in the former art, like that of Painter, the material was hard fiber; but nothing results from the paper characteristics, though it is evidently a preferable material, because, as said in the Circuit Court of Appeals (164 Fed. 862, 91 C. C. A. 8), the idea of using paper for such purposes was not new.

Marshall claims he accomplished his beneficial result by forming an elastic insulating sleeve or lining having a portion of its periphery of larger diameter than the part of the shell within which it is to fit, so that, as the lining is inserted in the shell, this portion will be compressed, and by its elasticity will maintain an effective holding pressure on the shell under all conditions; and, while he says that his lining may be made of any suitable insulating material having the requisite elasticity, he has discovered that such lining may be formed from paper tubing consisting of closely-wound layers of paper.

It is obvious that, if Marshall's device could be sustained at all, it must be through the idea of ingeniously shaping and forming a wellknown material and adapting it to a particular use. It is plain enough that Marshall did furnish a lining of practical utility, and one which very likely is generally used; but the question remains whether it amounted to invention.

[2] Though we accept the full meaning of the constitutional provision in respect to inventions as one intended to promote the progress of the sciences and the useful arts, by giving to inventors and authors exclusive rights for a limited time, we cannot disregard the rules of public policy which enter into all cases of this kind. Reasonable consideration of such rules rejects the idea of accepting every ingenious and beneficial mechanical device as involving invention or discovery within the meaning of the Constitution and the statutes.

It must be admitted that Marshall's device comes very near invention, because its shape and adaption were meritoriously ingenious. Still our conclusion is that it does not involve such a discovery, or such a description of an original device, as should give it a patentable status carrying the exclusive right to make, use, and sell throughout the United States and territories. Such monopolies embarrass mechanical enterprises and the freedom of trade, and they should only be created and maintained in situations where the party claiming them describes an original discovery, or a device with mechanical means, having a pretty full measure of merit. To decide what that measure is is always difficult. It is largely a question of fact, and from the very nature of things there are no two cases alike.

It is with some hesitation that we do it, but on the whole we are inclined to adopt the theory expressed by this court, in Independent Die Co. v. Savels, 228 Fed. 45, 142 C. C. A. 501, in respect to the Gimson patent. Here, as there, the suggestion was a valuable one, but it must be accepted as a suggestion of a new use of something old, involving a mechanical change in shape and form, rather than as one involving an original discovery, or a line of ingenious mechanical adaptations amounting to patentable invention.

The decree of the District Court is affirmed, with costs of this court.